1  Oliver M. Gold, Bar No. 279033
   OGold@perkinscoie.com
2  PERKINS COIE LLP
   1888 Century Park East Suit 1700
3  Los Angeles, CA 90067-1721
   Telephone: +1.310.788.3291
4  Facsimile:  +1.310.843.1272

5  Attorney for Non-Party
   GOOGLE LLC

   UNITED STATES DISTRICT COURT

   NORTHERN DISTRICT OF CALIFORNIA

| In re Ex Parte Application of<br><br>Saki Takada | Case No. 22-mc-80221<br><br>**RESPONDENT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA**<br><br>Date:        December 20, 2022<br>Time:        10:00 a.m.<br>Courtroom:   2, 5th Floor<br>Judge:       Virginia K. DeMarchi |
|---|---|

## NOTICE OF MOTION AND MOTION TO QUASH

**PLEASE TAKE NOTICE** that on December 20, 2022 at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 2, Fifth Floor, of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Respondent Google LLC ("Google") will, and hereby does, move to quash or modify the subpoena issued by Applicant Saki Takada ("Applicant") which seeks, among other things, identifying information in connection with potential litigation in Japan.

Google brings this motion under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires the court for the district where compliance is required (the Northern District of California for Google, which is headquartered in Mountain View) to quash a subpoena that requires disclosure of a protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Oliver M. Gold, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Google respectfully requests that the Court quash the Subpoena unless it finds that Applicant has satisfied the requisite safeguards under the First Amendment to the U.S. Constitution.

Dated: November 14, 2022          **PERKINS COIE LLP**

                                  By: */s/ Oliver M. Gold*
                                       Oliver M. Gold

                                  Attorney for Non-Party
                                  GOOGLE LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Respondent Google LLC ("Google") brings this Motion to Quash or Modify Applicant Saki Takada's ("Applicant") October 3, 2022 subpoena to Google ("Subpoena") in this action under 28 U.S.C. § 1782 ("Section 1782").

Applicant, a criminal defense attorney practicing law in Japan, is seeking to unmask an anonymous YouTube user who posted a YouTube video of a recorded conversation between the Applicant and another person. The contested speech is purported "falsities" in the title, description, and comments section of the YouTube video regarding the Applicant's law firm. However, the speech at issue may be protected opinion or hyperbole. Google therefore brings this Motion to ensure that the Court considers whether the account holder should, in fact, be unmasked when considering the safeguards applicable to anonymous speech. This review is particularly important, given the severity of Japan's defamation law. In the criminal context, an online speaker could face up to three years in jail for defamation and up to one year for insults.[1]

Under the safeguards applicable to anonymous speech, an Applicant must first demonstrate a *prima facie* claim for defamation under Japanese law. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *4 (N.D. Cal. Sept. 9, 2021) (applying the standard set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005) ("*Highfields*")); *In re Ex Parte Application for Himeka Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25 at 8 (N.D. Cal. Feb. 8, 2021) (same). However, the Applicant has not provided any competent evidence establishing a *prima facie* claim for defamation. Rather, the Applicant only offers unsupported conclusory claims that the statements qualify as criminal defamation.

Second, it does not appear that the balancing of harms weighs in Applicant's favor. *Highfields*, 285 F. Supp. 2d at 974. Applicant merely concludes that the statements have harmed

---

[1] See Articles 230-231 of the Japanese Criminal Code; see also Japan's Tougher Penalties Against Defamation Go Into Effect, NIPPON (July 7, 2022 11:14 am JST), https://www.nippon.com/en/news/yjj2022070600869.

Applicant's reputation as an attorney, but there is no evidence showing a causal connection between the statements and the decline in potential business leads. On the other hand, the harm from chilling anonymous speech on Google's platform is a serious concern. *See In re Tagami*, No. 21-MC-80153-JCS, 2021 WL 5322711, at *4 n.2 (N.D. Cal. Nov. 16, 2021) (expressing concern that Section 1782 requests to identify anonymous speakers "will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers"). This is particularly true given that anonymous speaker here, who may potentially be the crime victim, could be threatened with criminal defamation proceedings in Japan resulting in incarceration.

Accordingly, Google respectfully requests that the Court quash or modify the Subpoena to the extent Applicant has not satisfied the safeguards applicable to anonymous speech.

## II.   FACTUAL BACKGROUND

Applicant is a Japanese attorney practicing in Japan, who served as criminal defense counsel to an individual accused of a crime in Japan ("Accused"). ECF No. 1, at 1. During Applicant's representation of the Accused, the Applicant participated in settlement negotiations with the alleged victim ("Victim"). *Id*. at 2. Applicant claims that, during those settlement negotiations, the Victim "consistently and persistently verbally attacked and harassed" the Applicant. *Id*.

YouTube is a service operated by Google, which allows people with a YouTube account to post videos and write comments. *See* Declaration of Oliver M. Gold ("Gold Decl."), ¶ 2. Applicant claims the Victim posted a YouTube video on September 25, 2021 ("YouTube Video") in which the Victim put forward certain "falsities" about the Applicant in the title, description, and comments section of the video. ECF No. 1, at 2. The Youtube Video contained the following title and description, as translated in the Application:

> [Corrupt] Nakamura International Criminal Law Office Attorney Saki Takada
> [Negligent]
>
> ...
>
> Stupid Net Takada
>
> ...
>
> Saki Takada, an Attorney at Nakamura International Criminal Law Office
>
> During our discussion, she repeatedly becomes unreachable, and when I call her again, she halfheartedly gives me this kind of smirk. I'm showing this so that other users are not damaged in a similar way.

ECF No. 1-3, at 8. Applicant also challenges the following comments on the Video, as translated in the Application:

> Endymion diana 10 months ago
>
> No matter how angry you are at the other person's lawyer, I don't know who is the perpetrator if you are making fun of her by changing the tone of your voice ...
>
> Stupid Net Takada 10 months ago
>
> I'm not making fun of her. I'm doing it to plead to her just how much Attorney Saki Takada is talking in a derogatory manner. Besides, even after I complained to the bar association, her protracted negligence and sloppy attitude did not change. Due to the negligence of this law firm and Attorney Saki Takada, the discussion which would usually end in 2.3 weeks, took four months.

ECF No. 1-3, at 9.

On August 23, 2022, Applicant applied to the Court for Discovery pursuant to Section 1782 to identify the anonymous speaker to bring a defamation lawsuit in Japan. ECF No. 1, at 3. Applicant claims that the statements connected to the YouTube Video are false, accusing the Applicant of negligence and corruption. *Id.* at 2. Applicant concludes that her reputation has been "significantly harmed" after the YouTube Video was published. *Id.* While Applicant "is certain that the title, description, and comments to the YouTube [V]ideo . . . were published by the Victim," the Applicant "needs evidence to show" that the Victim published the Video in order to file a criminal complaint for criminal defamation in Japan. *Id.*

On October 3, 2022, the Court issued an order authorizing Google to move to quash the Subpoena within 30 days from the date of notice to the account holder. ECF No. 21 ("Order"). Applicant served the Subpoena on Google pursuant to the Court's Order on October 4, 2022. *See* Gold Decl., ¶ 3. Google provided notice of the Subpoena to the account holder on October 14,

2022, making its deadline to move to quash fall on November 14, 2022. *Id.* at ¶ 4. This Motion follows.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Also, in Section 1782 actions, the following factors govern whether a subpoena should be issued (or should have been issued): (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004).

### IV.   ARGUMENT

Anonymous online speech is protected by the First Amendment to the United States Constitution. The Ninth Circuit recognized that, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

This protection applies in the context of Section 1782 applications when a foreign civil litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts. Specifically, where a Section 1782 implicates anonymous speech, courts are required to engage in a First Amendment analysis in order to determine whether the request is unduly intrusive or burdensome under the fourth discretionary factor under *Intel*. *See, e.g.*, *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (granting motion to quash a subpoena seeking to identify anonymous account holders because plaintiff's subpoena was "unduly burdensome under *Intel*"); *see also Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25 at 5 (considering

anonymous speech arguments in the context of the fourth factor).

Courts have held that, because Section 1782 actions are evaluated in the context of the Federal Rules of Civil Procedure, foreign litigants must demonstrate good cause under Federal Rule of Civil Procedure 26(d) for the subpoena using the following factors, which considers whether the applicant:

> (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information.

*In re Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019) (citing *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013)).

However, under the fourth factor, demonstrating that a subpoena could survive a motion to dismiss is not enough in the context of anonymous speech. Instead, anonymous speech implicates the *Highfields* test, which requires a court to "'go beyond the pleadings to determine if there is an evidentiary basis for concluding that the requested discovery is appropriate.'" *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (applying *Highfields* in a Section 1782 action); *see also Kaminaguchi*, Order, Case No. 20-mc-80124-NC, Dkt. 25 at 8 (same); *In re PGS Home Co. Ltd.,* No. 19-MC-80139-JCS, 2019 WL 6311407, at *1 (N.D. Cal. Nov. 25, 2019) (citing *Highfields*, 385 F. Supp. 2d at 975) (imposing a higher evidentiary standard under *Highfields* in a Section 1782 action because "[t]he standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests").

Under the first step of the *Highfields* test, a litigant must first demonstrate a *prima facie* cause of action supported by *competent* evidence. *Music Grp. Macao Comm. Offshore Ltd., v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76). Allegations and speculation are insufficient. *Id*. If "any essential fact or finding lacks the requisite evidentiary support," a court may not enforce the subpoena. *Id*. at 976.

Even if a plaintiff satisfies the first step of *Highfields*, a court must still weigh the harm that would be caused to the plaintiff and defendant's interests, should the court order disclosure of

the defendant's identity. *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *6 (N.D. Cal. Feb. 14, 2020). Absent satisfaction of both steps of the *Highfields* test, the plaintiff cannot discover the anonymous speaker's identity. *See Music Grp. Macao*, 82 F. Supp. 3d at 985-87.

As explained below, Applicant does not appear to satisfy the requisite First Amendment standards under either step of the *Highfields* test.

### A. Applicant does not appear to have demonstrated a *prima facie* cause of action under Japanese law supported by evidence.

As a preliminary matter, Applicant has not made a *prima facie* claim of defamation under Japanese law. *Music Grp. Macao*, 82 F. Supp. 3d at 983 (requiring a *prima facie* claim of defamation under Japanese law supported by competent evidence) (citing *Highfields*, 385 F. Supp. 2d at 975-76). To do so, Applicant must set forth the legal standard for defamation and address how the speech could withstand scrutiny in Japan. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (granting motion to quash on the grounds that the applicant's claim for defamation was conclusory, and the applicant failed to "provide the applicable Japanese legal standard for defamation" and to "address whether a claim based on the tweet could withstand a motion to dismiss in Japan").

Instead, Applicant asserts two conclusory statements that the Victim's purported statements qualify as criminal defamation under the Penal Code of Japan. *See* ECF No. 1, at 3 ("The Victim has committed criminal defamation pursuant to Paragraph 1 of Article 232 of the Penal Code of Japan . . . ."); *Id*. at 4 ("Because the defamatory statements published by the Victim meet the elements of criminal defamation, the Japanese police have shown a willingness to accept the criminal complaint."). Conclusory statements such as these fail to qualify as the "competent evidence" necessary to establish a *prima facie* case of defamation under *Highfields*. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 ("Under the *Highfields* standard, the moving party 'must adduce *competent evidence*—and the evidence [the moving party] adduces must address *all* of the inferences of fact that [it] would need to prove in order to prevail under at least one of the causes of action [it] asserts.'") (emphasis in original) (quoting *Highfields*, 385 F. Supp. 2d at 975-76).

The failure to meet this standard is dispositive. *See Smythe v. Does*, No. 15-MC-80292-LB, 2016 WL 54125, at *4 (N.D. Cal. Jan. 5, 2016) (explaining if Applicant has not demonstrated a *prima facie* claim of defamation against the account holder, the Court need not consider the second step of the *Highfields* test).

### B. The balance of harms weighs in favor of the anonymous speaker.[2]

Under the second step of the *Highfields* test, "the court must . . . 'assess and compare the magnitude of harms that would be caused' to the plaintiff's and defendant's competing interests if the court ordered disclosure of the speaker's identity." *In re Yasuda*, 2020 WL 759404, at *6 (citing *Music Grp. Macao*, 82 F. Supp. 3d at 983). A subpoena may be quashed if, standing alone, the balancing of harms weighs in favor of the anonymous speaker. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, No. 20-MC-80214-VC, 2022 WL 2205476, at *7 (N.D. Cal. June 21, 2022) (noting that even if the Applicant in a DMCA action had demonstrated a prima facie claim, "the subpoena would still need to be quashed because the balance of equities" tilted in the anonymous speaker's favor).

Applicant also does not satisfy this second step. *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *5 (finding evidence of harm insufficient where there was no evidence that attendance at a university declined as a result of allegedly defamatory speech on online platform). Applicant's only evidence is a declaration that her reputation as an attorney has been harmed as a result of the speech. ECF No. 1, at 2. Applicant does not provide any additional explanation of this harm or how any decline in her reputation is directly attributable to the YouTube post. Rather, Applicant appears to conclude there has been harm from the post where any number of factors could impact a reputation at any given time.

On the other hand, if the Court orders disclosure of the anonymous speakers' identities, there is a real risk of harm. Unmasking the account holder "poses a real threat to chill protected comment on matters of interest to the public." *Highfields*, 385 F. Supp. 2d at 980–81. This is

---

[2] An analysis under this second prong is not necessary since Applicant has not met the standard under the first prong. *See Smythe*, 2016 WL 54125, at *4. Regardless, Google provides this analysis out of an abundance of caution.

allegedly a crime victim criticizing her interactions with an attorney, perhaps by expressing her opinion or engaging in hyperbole—under United States policy, this is hardly the type of conduct the United States would criminalize. *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (finding statements not actionable where one accused another of being a "fraud," a "criminal," or acting illegally); *see also Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1135 (W.D. Wash. 2007) ("Just like rip-off, fraud, scandal, and snake-oil job in *Phantom Touring,* and scam in *McCabe,* the allegedly defamatory words in this statement are imprecise hyperbole, incapable of defamatory meaning. . . ."); *id*. n.8 ("'Snitch,' 'squealer,' and 'liar,' may constitute 'abusive opinion,' which is nonetheless not actionable as defamation.").

So too here, there does not appear to be any real harm to Applicant, and it appears more likely that the discovery will be used to chill speech. This possibility is particularly concerning because this potentially involves a crime victim and Japanese defamation law carries the possibility of criminal proceedings and incarceration for the speech. Google should not be required to decide whether this is actionable and hand this information over to the authorities. Accordingly, given the speculative nature of the harm, and the chilling effect on unmasking, the balance of harms appears to weigh in favor of the anonymous speaker.

## V.  CONCLUSION

For the foregoing reasons, Google therefore respectfully requests that the Court permits production only if the Applicant has satisfied the safeguards for unmasking the identity of an anonymous speaker.

Dated:  November 14, 2022                                   **PERKINS COIE LLP**


By:  */s/ Oliver M. Gold*
      Oliver M. Gold


Attorney for Non-Party
GOOGLE LLC