UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE EX PARTE APPLICATION OF SAKI TAKADA,

Applicant.

Case No. 22-mc-80221-VKD

**ORDER DENYING GOOGLE'S MOTION TO QUASH SUBPOENA**

Re: Dkt. No. 22

On October 3, 2022, the Court granted, with modifications, applicant Saki Takada's *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for documents on respondent Google LLC ("Google"). Dkt. No. 21. Google moves to quash the subpoena. Dkt. No. 22.

The Court held a combined hearing on Google's motion and a separate motion to quash applicant's subpoena to Twitter, Inc. ("Twitter"), together with similar motions to quash filed by Google in *In Re Ex Parte Application of Team Co, Ltd.* (No. 22-mc-80183) and by Twitter in *In re Ex Parte Application of Takagi* (No. 22-mc-80240). Having considered the parties' submissions, as well as oral argument, the Court denies Google's motion to quash.[1]

**I.  BACKGROUND**

According to the application, Ms. Takada is a Japanese attorney practicing law in Japan. Dkt. No. 1 at 1. Ms. Takada says that in connection with her representation of a client in a

---

[1] Ms. Takada and Google have consented to magistrate judge jurisdiction. Dkt. Nos. 8, 20.

criminal case, the alleged crime victim "verbally attacked and harassed" her.[2]  *Id.* at 2.  Among other things, Ms. Takada says that on September 25, 2021, the victim (using a pseudonym) published a recording of a telephone conversation between the victim and Ms. Takada on Google's YouTube service, together with a title, description, and comments that make derogatory references to Ms. Takada.[3]  *Id.*; Dkt. No. 1-1 ¶¶ 10, 20-23.  In addition, Ms. Takada says that on October 3 and 4, 2021, the victim (using a different pseudonym) published derogatory tweets about Ms. Takada on the Twitter service.  Dkt. No. 1 at 2: Dkt. No. 1-1 ¶ 18.

Ms. Takada says that the YouTube and Twitter publications contain false statements that have harmed Ms. Takada's reputation.  She says she wishes to file a criminal complaint against the victim for criminal defamation in Japan.  Dkt. No. 1 at 2-3.  She explains that under Japanese law, once the Japanese police receive a criminal complaint for defamation, they are required to investigate the complaint to determine whether to recommend prosecution of the alleged offender.  *Id.* at 4.  However, the criminal complaint must include evidence specifically identifying the person alleged to have published the defamatory material in question.  *Id.*  In this case, Ms. Takada says that she cannot prepare the necessary complaint without information from Google and Twitter confirming that the person who published the YouTube recording and the tweets is the victim.  *Id.*

Ms. Takada applied for permission to serve a subpoena on Google to obtain documents that would allow her to identify the person who posted the YouTube recording and to confirm that the victim is the poster.  Dkt. No. 1, Ex. A at ECF 16-17.  The Court granted the application, with modifications, but required Google to give notice to the relevant account holder before complying with the subpoena.  Dkt. No. 21.  In addition, the Court authorized Google or "any person whose identifying information is sought" to file a motion to quash or other motion contesting the subpoena.  *Id.* at 10.

Google now moves to quash the subpoena.  Dkt. No. 22.  Ms. Takada opposes the motion.

---

[2] The application does not identify the victim by name.

[3] According to the application, it is customary in Japan for defense counsel to engage in settlement negotiations with the alleged crime victim.  Dkt. No. 1 at 2; Dkt. No. 1-1 ¶ 5.

2

Dkt. No. 25.

## II. LEGAL STANDARD

Rule 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Id.* at 264. In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65.

## III. DISCUSSION

Google does not dispute that Ms. Takada's application meets the statutory requirements of 28 U.S.C. § 1782(a). Nor does it contend that compliance with the subpoena requires Google to undertake unduly burdensome or costly efforts to search for and produce the documents

3

requested.[4] Rather, Google moves to quash the subpoena on the ground that because the discovery requested implicates the First Amendment rights of an anonymous speaker, without adequate justification and evidentiary support, the subpoena is "unduly intrusive and burdensome" under the fourth *Intel* factor. Dkt. No. 22 at 6. Ms. Takada opposes the motion to quash on the ground that the First Amendment does not apply to the speech in question, and even if it did, Ms. Takada has demonstrated good cause for the discovery she seeks. Dkt. No. 25 at 2. In its reply brief, Google raises an additional argument that the subpoena "conceals an attempt to circumvent" a U.S. policy favoring freedom of speech under the third *Intel* factor. Dkt. No. 29 at 7-8.

**A.    Whether the First Amendment Applies to Ms. Takada's Application**

Google argues that anonymous online speech is protected by the First Amendment to the U.S. Constitution, and that "[t]his protection applies in the context of Section 1782 applications when a foreign civil litigant, such as Applicant, seeks discovery in the United States with the assistance of United States courts." Dkt. No. 22 at 6. Google argues that the Court may not authorize discovery to ascertain the identity of the anonymous poster unless Ms. Takada first satisfies the requirements of the *Highfields* test. *Id.* at 7 (referring to *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005)). Ms. Takada responds that the First Amendment does not protect the speech of a non-U.S. citizen located in Japan whose speech is not directed at a U.S. audience. Dkt. No. 25 at 2, 6.

U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*USAID I*"), 570 U.S. 205 (2013). Moreover, absent national security concerns, the First Amendment protects the right to receive information in the United States from outside U.S. territory. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743-44 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct. 1674 (2022). However, while non-citizens within a U.S. territory may possess certain constitutional rights, "it is

---

[4] In a footnote at the end its reply brief, Google complains that Ms. Takada's document requests are "overbroad." Dkt. No. 29 at 13, n.7. This belated objection is too little, too late. *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.7 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").

1  long settled as a matter of American constitutional law that foreign citizens outside U.S. territory
2  do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y*
3  *Int'l, Inc.* ("*USAID II*"), 140 S. Ct. 2082, 2086 (2020) (holding that foreign corporations do not
4  possess First Amendment rights, even if affiliated with U.S. entities).
5        Google cites no contrary authority. Instead, it relies exclusively on cases that assume,
6  without discussion or analysis, that the First Amendment applies. *See* Dkt. No. 22 at 3, 6, 8 (citing
7  *Tokyo Univ. of Social Welfare* and *In re ex parte application for Himeka Kaminaguchi*); *see also*
8  Dkt. No. 29 at 4 (citing additional district court cases in reply). Indeed, in its motion to quash,
9  Google entirely ignores the only case directly on point in this District: Judge Tse's decision in
10 *Zuru, Inc. v. Glassdoor, Inc.*, --- F. Supp. 3d ----, No. 22-MC-80026-AGT, 2022 WL 2712549
11 (N.D. Cal. July 11, 2022). *Zuru* expressly considered and rejected the proposition that the Court
12 must apply First Amendment scrutiny to an application for discovery under 28 U.S.C. § 1782
13 where the discovery is sought in aid of a foreign defamation action against anonymous posters of
14 reviews critical of a foreign company:

> Courts use the "real evidentiary basis" standard [of *Highfields*] to protect First Amendment rights. But the speakers here, the anonymous reviewers, don't have those rights. They worked for Zuru in New Zealand, and there's no reason to believe they were U.S. citizens. "[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including under the First Amendment.

19 *Zuru*, 2022 WL 2712549, at *5 (quoting *USAID II*, 140 S. Ct. at 2086). In its reply, Google calls
20 *Zuru* an "outlier" and suggests that the Court nevertheless should rely on the cases that merely
21 assume the First Amendment applies. *See* Dkt. No. 29 at 1, 4.
22       Here, as in *Zuru*, there is no reason to believe that the anonymous poster is a U.S. citizen.
23 The recording posted on the YouTube service was in Japanese, as were the title, description, and
24 comments associated with the recording. And while the poster's allegedly defamatory statements
25 may be accessible to anyone with an Internet connection, including U.S. citizens, the posting was
26 not directed at the United States or anyone residing in U.S. territory. *Cf. Lamont v. Postmaster*
27 *General,* 381 U.S. 301, 306 (1965) (holding unconstitutional a federal statute ordering seizure of
28 "communist political propaganda" that was "printed or otherwise prepared in a foreign country"

and sent to the United States). Google cites no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet.

Google observes that Ms. Takada has not demonstrated definitively that the anonymous poster is *not* a U.S. citizen. *See* Dkt. No. 29 at 3, 8 n.4. In these circumstances, Google suggests that the Court take a "protective approach" and assume that the anonymous poster enjoys First Amendment protection. *See id.* at 4. The Court declines this suggestion for two principal reasons. First, Google is the party moving to quash and has access to information Ms. Takada does not have, including a means to communicate with the holder of the account that posted the recording. Even if Google also does not have definitive information about the anonymous poster's citizenship, it likely is in a better position than Ms. Takada to identify facts relevant to the question of citizenship. Having examined its own records and given notice to the anonymous poster, as the Court ordered, Google has identified no information suggesting that the anonymous poster might be a U.S. citizen or otherwise entitled to First Amendment protection. During the hearing, Google advised the Court that the anonymous poster has not indicated to Google that he or she objects to disclosure of the information Ms. Takada requests, and no such objection has been filed with the Court.

Second, as the Supreme Court emphasized in *Intel*, "[s]ection 1782 is a provision for assistance to tribunals abroad." *Intel*, 542 U.S. at 263. It does not require an applicant to show "that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id.* Google's objection to Ms. Takada's subpoena reflects a deep skepticism about the merits of Japanese defamation law and about the operation of the Japanese legal system. *See, e.g.,* Dkt. No. 22 at 3 (citing the "severity of Japan's defamation law" in urging the Court to consider whether the account holder should be "unmasked"). The Court agrees with Judge Tse's observations in *Zuru* that "[o]ur country's commitment to free speech isn't universally shared; and even in other countries that protect free speech, a different balance is often struck between the right to free speech and the right to protect one's reputation, with the latter right usually receiving more weight." *Zuru*, 2022 WL 2712549, at *5. Simply assuming First Amendment protection

6

applies, in the absence of any facts or circumstances suggesting that it does, is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog.

While the Court certainly has discretion to consider "the nature of the foreign tribunal" and "the character of the proceedings," *see Intel*, 542 U.S. at 246 (second factor),[5] the Court is not persuaded that Ms. Takada's subpoena implicates the First Amendment to the U.S. Constitution, or that the subpoena will impose an undue burden on Google or the anonymous poster unless Ms. Takada first makes a prima facie showing of defamation under Japanese law, supported by evidence, under the *Highfields* test.

### B. Whether Ms. Takada's Application Must Meet an Alternative Standard of "Good Cause" or "Plausibility"

Google notes that some courts require applicants seeking discovery before a foreign proceeding is initiated to meet the "good cause" standard that applies to requests for early discovery under the Federal Rules of Civil Procedure. Dkt. No. 22 at 7. The "good cause" standard requires consideration of whether the applicant: (1) identifies the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identifies all previous steps taken to locate and identify the party; (3) demonstrates that the action can withstand a motion to dismiss; and (4) proves that the discovery is likely to lead to identifying information. *See, e.g., Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021); *In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019); *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013); *see also Columbia*

---

[5] Google does not suggest that either its compliance with the subpoena or Ms. Takada's proposed Japanese defamation action will lead to a violation of fundamental human rights. *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 572 (9th Cir. 2011) ("We can conceive of situations in which the Constitution might require the district court to deny a request for assistance. For example, if credible evidence demonstrated that compliance with a subpoena would lead to an egregious violation of human rights, such as torture, then the Constitution may require the courts to deny assistance.").

*Ins. Co. v. seescandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."). This approach appears to be based on a view that "discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure." *Tokyo Univ.*, 2021 WL 4124216, at *3.

The proposition that applicants for discovery pursuant to 28 U.S.C. § 1782 are, or should be, required to show "good cause" for that discovery does not have clear support in the language of the statute itself. Section 1782 provides in relevant part:

> The order [authorizing discovery] may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). In *Intel*, the Supreme Court described this "practice and procedure" part of the statute as a "mode-of-proof-taking instruction" that "imposes no substantive limitation on the discovery to be had." *Intel*, 542 U.S. at 260 n.11.[6] For this reason, the Court questions whether it is appropriate to *require* Ms. Takada to meet the "good cause" standard Google describes as a pre-condition for discovery.

Alternatively, Google argues in its reply brief that Ms. Takada's proposed defamation action does not meet the "plausibility standard set forth in *Zuru*," and the subpoena should be quashed on this basis. Dkt. No. 29 at 14. Google's arguments about a "plausibility" standard are not well-developed, and it is not entirely clear what standard Google would have the Court apply. The *Iqbal/Twombly* "plausibility" standard for domestic pleadings requires factual allegations that permit the court to draw a reasonable inference that the defendant is liable for the alleged

---

[6] However, elsewhere, the Court suggested that "the controls on discovery" available to the district court, such as in Rules 26(b) and (c), could be employed to prevent improper discovery of trade secrets and other confidential information. *Intel*, 542 at 266.

8

1    misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550
2    U.S. 544, 555 (2007). Nothing in the text of 28 U.S.C. § 1782 suggests that Congress
3    contemplated that district courts would apply this type of "plausibility" test to the foreign claim
4    before authorizing discovery. Indeed, undertaking an *Iqbal/Twombly*-type "plausibility" review
5    would be difficult to do where, as here, a foreign criminal proceeding is anticipated but no
6    complaint or indictment has been filed, or where the case-initiating documents in the foreign
7    proceeding do not require the same kind of supporting factual allegations. *See Intel*, 542 U.S. at
8    259 (adjudicative proceedings need not be pending or imminent, so long as they are within
9    reasonable contemplation; discovery may be obtained for use in pre-complaint investigations).

10   In *Zuru*, Judge Tse did not require Zuru to support each element of its defamation claim
11   with competent evidence, but instead "considered Zuru's allegations and concluded that they
12   could support a defamation claim in New Zealand." *Zuru*, 2022 WL 2712549, at *2-3, *6; *see
13   also id.*, at *2 ("Putting aside whether Zuru will be able to prove these four elements [of
14   defamation] at trial, it is clear that the company plausibly can plead them."). *Zuru* acknowledged
15   that "a merits review isn't required" but that "[a] peek at the merits" was appropriate in that
16   particular case. *Zuru*, 2022 WL 2712549, at *2. In peeking at the merits, Judge Tse undertook a
17   substantive review of Zuru's anticipated civil action: the court examined the elements of Zuru's
18   claim for defamation under New Zealand law, considered Zuru's supporting declarations, and
19   assessed Glassdoor's counter-arguments before concluding that Zuru could support a plausible
20   claim for defamation under New Zealand law. *Id.* at *2-*3.

21   While nothing prevents the Court from considering whether a section 1782 application
22   describes a plausible claim for relief, such that the claim might withstand a motion to dismiss
23   under Rule 12(b)(6) and *Iqbal/Twombly* if it were filed as a domestic action, or otherwise reflects
24   "good cause" for discovery, the Court is reluctant to endorse a standard for exercising discretion
25   that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that
26   seems ill-suited to an application for discovery in aid of a foreign proceeding that is within
27   reasonable contemplation but not yet filed. However, at a minimum, a district court can require an
28   applicant to describe the legal and factual bases for a contemplated foreign legal proceeding, and

1  to explain how the discovery the applicant seeks will aid prosecution of that proceeding.

2  Here, Ms. Takada exceeds that minimum standard. She has described a plausible claim
3  against the victim, whom she reasonably suspects is the anonymous poster, and has shown good
4  cause for discovery.[7] Ms. Takada intends to file a criminal complaint for defamation under Article
5  230 of the Penal Code of Japan. Dkt. No. 25 at 4. The elements of a criminal defamation offense
6  are (1) publication; (2) of facts, whether true or untrue; (3) that damage a person's public
7  reputation. *Id.*; Dkt. No. 25-2 ¶ 6. Whether a statement lowers a person's public reputation is
8  judged "based upon how an average reader with ordinary attention would ordinarily read" the
9  statement. Dkt. No. 25-2 ¶ 9. According to Ms. Takada's declaration, Japanese law enforcement
10 are receptive to accepting the criminal complaint for defamation, but require information linking
11 the poster to the victim who is suspected of committing the offense. Dkt. No. 1-1 ¶ 28. Ms.
12 Takada provides English language translations of the statements at issue, which describe Ms.
13 Takada as corrupt, negligent, and non-responsive. Dkt. No. 1-3, Ex. B. Ms. Takada relies on a
14 declaration of Japanese counsel who attests that, in counsel's opinion, the comments posted on
15 YouTube would support a claim for criminal defamation and would support a criminal
16 investigation, if the poster could be identified. Dkt. No. 25-2 ¶¶ 7, 8, 11.

17 In its motion to quash, Google ignores Japanese law in challenging the viability of Ms.
18 Takada's proposed criminal complaint. *See* Dkt. No. 22 at 8-9. In reply to Ms. Takada's
19 opposition and supporting declarations, Google continues to rely on U.S. legal principles. *See*
20 Dkt. No. 29 at 10. Google does not provide any competing declaration regarding the requirements
21 of Japanese law. Its principal objection is that Ms. Takada's allegations are conclusory. *See* Dkt.
22 No. 22 at 8-9. In any event, at oral argument Google indicated that it does not necessarily take the
23 position that the discovery should be denied; rather, Google's primary interest is in having the
24 Court conduct some sort of review of an applicant's claims before information is produced. Dkt.
25 No. 33.

---

[7] Google does not dispute that Ms. Takada identified the anonymous poster with sufficient specificity, explained why she requires discovery from Google to locate and identify the anonymous poster, and demonstrated that Google likely has the identifying information Ms. Takada needs.

It remains to be seen whether Ms. Takada succeeds on the merits of her anticipated criminal defamation action, or even whether the Japanese authorities determine after investigating that the matter should be prosecuted. But Google has not made a persuasive case that the proposed criminal complaint for defamation is pretextual or intended solely to harass, or that there is any other reason for this Court to quash Ms. Takada's subpoena in the exercise of its discretion under 28 U.S.C. § 1782. The merits of Ms. Takada's complaint should be addressed by the relevant authorities and/or the court in Japan.

### C. Whether the Subpoena Circumvents U.S. Policy

In its reply brief, Google raises an additional argument that the discovery Ms. Takada seeks reflects an effort to circumvent a policy of the United States to protect free speech rights, consistent with First Amendment principles, even if the speaker is a non-citizen residing in a foreign country and the speech is not directed to the United States. *See* Dkt. No. 29 at 5. As Ms. Takada correctly observes, Google did not raise this issue in its motion to quash, *see* Dkt. No. 25 at 9, and therefore Ms. Takada did not have an opportunity to respond to this argument in its opposition.

The Court will not consider arguments raised by the moving party for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

### IV. CONCLUSION

For the reasons explained above, the Court denies Google's motion to quash. Google shall produce documents responsive to the subpoena no later than 30 days from the date of this order.

Any information Ms. Takada obtains pursuant to the subpoena may be used only for purposes of the anticipated criminal complaint, and Ms. Takada may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: February 1, 2023



VIRGINIA K. DEMARCHI
United States Magistrate Judge

11